**UNITED STATES v. BORAX CONSOL.,**
Limited, et al.

No. 23690–G.

District Court, N. D. California, S. D.
July 27, 1945.

Wendell Berge, Asst. Atty. Gen., Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., Holmes Baldridge, James McI. Henderson, and Joseph L. Alioto, Sp. Assts. to Atty. Gen., and Don H. Banks, William H. Henderson, and Lawrence W. Somerville, Sp. Attys., all of San Francisco, Cal., for plaintiff.

Herman Phleger, Maurice E. Harrison, Moses Lasky, and Brobeck, Phleger & Harrison, all of San Francisco, Cal., and A. W. Ashburn, Newlin & Ashburn, of Los Angeles, Cal., for certain defendants.

Whedon & Bennett, of New York City, and Sherman & Peters, of San Francisco, Cal., for Gold Fields American Development Co., Limited.

GOODMAN, District Judge.

The United States in its complaint herein (filed September 14, 1944) charges defendants with monopoly and conspiracy contrary to the prohibitions of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, and 4, and prays that certain contracts between the parties be adjudged illegal, that defendants be enjoined from performing the same, and for the appointment of a receiver to sell the properties of certain of the defendants in order to effectuate the dissolution of the alleged combine.

Defendants have moved to dismiss the complaint on the ground "that the complaint fails to state a claim on which relief can be granted." In the alternative in the event of denial of the motion to dismiss, motions to separately state, to strike parts of the complaint, and to make more certain or for bill of particulars are urged.

The various motions have been ably and thoroughly briefed and argued by counsel for both sides.

The motion to dismiss is mainly based upon the claim that it appears from the complaint that the alleged conspiracy and combine terminated long prior to the commencement of the action and that there is therefore no need to invoke any of the equitable remedies besought by the United States.

The complaint alleges that defendant, American Potash and Chemical Corporation (a Delaware corporation), an essential party to the alleged conspiracy, owns or leases most of Searles Lake in the Mohave Desert, California, the repository of 99% of the world production of borax derived from lake brines. (Complaint pars. 6 and 35.) In substance, it is further alleged that the borax produced by the Potash Co. was approximately one-third of world production, while approximately the remaining two-thirds was produced by Borax Consolidated, Ltd., and its subsidiaries. (Complaint par. 62.)

"On Oct. 20, 1942 approximately 90% of the shares of stock of the American Potash and Chemical Corporation were vested in the Alien Property Custodian after investigation had disclosed that said stock was beneficially owned by citizens of the German Reich." (Complaint par. 6.)

Defendants contend that inasmuch as the Alien Property Custodian, for the United States, has had control[1] of American Potash and Chemical Corporation, an essential co-conspirator, since October 20, 1942, the alleged combine is at an end, cannot possibly be revived and that hence no claim for relief under the Act is stated. It is argued that past misfeasances, no matter how flagrant, do not per se justify the equitable remedies sought to be invoked. Only the reasonable likelihood of future infractions, it is claimed, may justify the drastic relief prayed for. Such

---

[1] By virtue of the 90% stock ownership.

likelihood, defendants say, is completely negatived on the face of the complaint, because it appears therefrom that the United States in fact owns and controls an indispensible party to the alleged combination.

Such a contention, in my opinion, cannot be sustained in the pleading stage of this litigation.

The office of Alien Property Custodian was created by the Trading with the Enemy Act, Oct. 6, 1917, c. 106, Sec. 6, 40 Stat. 411, 415, 50 U.S.C.A.Appendix, § 6. Section 6 of the Act provides in part:

"The President is authorized to appoint, prescribe the duties of, and fix the salary * * * of an officer to be known as the alien property custodian, who shall be empowered to receive all money and property in the United States due or belonging to an enemy, or ally of enemy, which may be paid, conveyed, transferred, assigned, or delivered to said custodian under the provisions of this Act; and to hold, administer, and account for the same under the general direction of the President and as provided in this Act. * * *"

Section 7 (c) of the Act, as amended by Act of Nov. 4, 1918 c. 201, Sec. 1, 40 Stat. 1020, 50 U.S.C.A.Appendix, § 7 (c), provides in part that:

"If the President shall so require any money or other property * * * belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy * * * shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act."

Section 12 of the Act, as amended by Act of Mar. 28, 1918 c. 28, Sec. 1, 40 Stat. 460, 50 U.S.C.A.Appendix, § 12, provides in part that:

"The alien property custodian shall be vested with *all of the powers of a common-law trustee* in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this Act, and, in addition thereto, acting under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe, *shall have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though* he were the absolute owner thereof. * * *

"*After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the alien property custodian or deposited in the United States Treasury, shall be settled as Congress shall direct: * * *.*" (Emphasis supplied.)

■ The Act has been judicially construed as vesting absolute title to enemy property in the United States. Cummings v. Deutsche Bank, 1936, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545. Undoubtedly, however, the Congressional intent was to take into account the former owner's interest upon final disposition of enemy property.[2]

The War Powers Act of 1941, Dec. 18, 1941, c. 593, Title III, Sec. 301, 55 Stat. 839, 50 U.S.C.A.Appendix, § 616, amended Section 5 of the Trading with the Enemy Act, which reads now in part as follows:

"(b)(1) During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate. * * *

"(B) * * * direct and compel * * * any * * * transfer * * * of * * * any property in which any foreign country or a national thereof has any interest, by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, *and upon such terms and conditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise*

---

2 This intent was carried out at the conclusion of World War I by the enactment of the Settlement of War Claims Act of 1928, Sec. 11, amending Section 9 of the Trading with the Enemy Act, 45 Stat. 270, 50 U.S.C.A.Appendix, § 9, whereby 80% of such property was authorized to be returned to the former owners, and 20% was retained for the settlement of claims of American Nationals against Germany.

*dealt with in the interest of and for the benefit of the United States, and such designated agency or person may perform any and all acts incident to the accomplishment or furtherance of these purposes.* \* \* \*" (Emphasis supplied.)

Thereafter, the President re-established the office of Alien Property Custodian, which had been abolished in 1934, in the Office of Emergency Management by Executive Order 9095, Mar. 11, 1942, 7 F.R. 1971, as amended by Executive Order No. 9193, July 6, 1942, 7 F.R. 5205, 50 U.S.C.A. Appendix, § 6, note. These executive orders conferred upon the Alien Property Custodian all of the powers granted to the President by Section 5(b) of the Trading with the Enemy Act, as amended, supra.

The Alien Property Custodian, therefore, may now be said to hold full and complete title to enemy property in behalf of the United States, without any beneficial interest remaining in the former owner. He may deal with such property, including the selling of it, in any manner appropriate to the interests of the United States. Since the matter of the final disposition of such property remains with Congress under Section 12 of the Act, the Custodian is accountable to the United States for any such property taken over by him, or its proceeds. What Congress will decide cannot be foretold. In any event, it cannot be stated with certainty that it will *not* restore all or part of the shares of Potash's stockholders.

■ It is impossible now to forecast the future activities of the defendant American Potash and Chemical Corporation. It cannot be presently determined with finality upon the pleadings that there is no reasonable likelihood of the continuance of the alleged illegal activities. Likewise, from the pleadings, it cannot be adjudicated whether the industry affected will need dissolution of the corporations involved or the other remedies prayed for. As was said by Judge Learned Hand in United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416,

446: "Dissolution is *not* a penalty but a remedy." (Emphasis supplied.)

The status and needs of the industry, as they affect the public interest, are the conditions which determine the nature and extent of the remedy. Equity does not operate to punish or chastise in cases of unlawful monopoly or combinations in restraint of trade.

■ The duration of the Custodian's tenure and control is neither fixed nor certain. Whether or not the control of the Alien Property Custodian results or will result in relieving the borax industry from the effects of the alleged combine cannot be resolved from the pleadings alone. Hence the court cannot, on motion to dismiss, determine that the public interest will not, upon the facts pleaded, require the aid of equity. Only the vista provided by the evidence will enable the court equitably to adjudicate the remedy. United States v. Aluminum Co., 2 Cir., 148 F.2d 416.[3]

Other grounds urged in support of the motion to dismiss have been considered by the court, but do not, in my opinion, warrant granting the motion.

The motion to dismiss is denied, without prejudice to its renewal at the time of trial, if defendants so elect. Then the Court may properly determine, if the infractions are proved, what, if any, remedy is proper.[4]

■ Defendants' motions to separately state, to strike out parts of the complaint and to make more certain or for Bill of particulars are severally denied.

The plaintiff's motion to strike the affidavits of Ashburn, Jenifer and Gerstley, is denied.

Ruling on plaintiff's motion to inspect is reserved until after issue is joined.

■ Both defendants' interrogatories and plaintiff's objections thereto are stricken. Defendants may propose interrogatories anew after joinder of issue. General Rule 26, Rules of Practice of this court.

---

[3] While decided by a Circuit Court, this decision has the same authority and finality as if decided by the Supreme Court, 15 U.S.C.A. § 29, amendment of 1944.

[4] Not unlike is the reasoning upon which Rule 12(d) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is based. See Montgomery Ward v. Schumacher, D.C., 3 F.R.D. 368; Bowles v. Bissinger & Co., D.C., 3 F.R.D. 494.