## In re GEORGIA, FLORIDA & ALABAMA R. CO.

### No. 89.

United States District Court
M. D. Georgia, Thomasville Division.

Feb. 15, 1950.

Edw. J. Kenn, White & Case, New York City, Walter A. Harris, Harris, Harris, Russell & Weaver, Macon, Ga., for Bankers Trust Co. & R. Gregory Page, mortgage trustees.

James H. Price, James H. Price, Jr., Price & Poag, Greenville, S. C., Wallace Miller, Miller, Miller & Miller, Macon, Ga., Frank B. Hand, Jr., Washington, D. C., for the debtor.

Charles J. Bloch, Hall & Bloch, Macon, Ga., for the trustee.

Leonard D. Adkins, Cravath, Swaine & Moore, New York City, James B. McDonough, Jr., Asst. Gen. Counsel, S. A. L. R. Co., Norfolk, Va., T. Mayhew Cunningham, Jr., Lawton & Cunningham, Savannah, Ga., A. O. B. Sparks, Jones, Jones & Sparks, Macon, Ga., for Seaboard Air Line R. Co.

DAVIS, Chief Judge.

### The Plan

The plan of reorganization of the Georgia, Florida & Alabama Railroad Company has been approved by the Interstate Commerce Commission and certified to the Court under the provisions of the Bankruptcy Act, Title 11 U.S.C.A. § 205, sub. d.

The Plan having been so certified, the Court has duly given notice to all parties in interest of the time within which they might file with the Court their objections to the plan.

The salient features of the plan are, as follows:

The reorganized company shall have a capitalization of $3,400,000. This new capitalization consists of the following securities: (a) First Mortgage 4½% income bonds in the amount of $1,225,000; (b) 10,500 shares of 5% preferred stock of the par value of $100 per share; and (c) 11,250 shares of common stock of no par value but stated at $100 per share.

These new securities and the cash now on hand are to be distributed, as follows: $630,000 in cash, all of the new bonds, all of the new preferred stock, and 8,750 shares of the new common stock are allotted to the holders of the debtor's first mortgage and refunding bonds. There have been pending before the Court claims of the bondholders for interest on interest, a claim of the Seaboard Air Line Railroad Company in the amount of approximately $329,000, and a claim of the first preferred stockholders based on their stock. These claims will, by orders of the Court to be entered contemporaneously with this opinion, be disallowed. Therefore, under the plan, the remaining 2,500 shares of common stock in the new company will, if the plan should be approved, be distributed pro rata to the holders of the outstanding first preferred stock. Under the proposed orders of the Court with respect to interest on interest, the claim of the Seaboard

Air Line Railroad Company and the claim of the first preferred stockholders, the plan is to be considered as if it specifically allotted to the holders of the debtor's first mortgage and refunding bonds $630,000 in cash, all of the bonds of the re-organized company and all of its capital stock with the exception of 2,500 shares of the new common stock which shall be distributed pro rata to the holders of the outstanding first preferred stock.

The property of the reorganized company shall be operated by the Seaboard for the term of twenty-one years under a lease. The earnings or rental for the use of the property accruing to the reorganized company will be computed and determined in accordance with the provisions of the so-called "Kennedy Formula". A betterment and rehabilitation program is set up for the purpose of putting the debtor's rail-road in condition for safe, efficient and economical operation. For these purposes, there shall be transferred to the Seaboard Air Line Railroad Company, as lessee, as part of the reorganization, the maximum sum of $1,100,000.

The plan also provides that holders of the preferred stock and the common stock shall have one vote per share on all matters except that provision shall be made for cumulative voting in the election of directors.

Objections to the Plan

Objections to the plan have been filed by the trustees under the first and refund-ing mortgage of the debtor, by the Sea-board Air Line Railroad Company, and by the Georgia, Florida & Alabama Railroad Company, the debtor. (Subsequent to the hearing, the Seaboard withdrew its objections.)

The objections of the mortgage trustee and the Seaboard were based on the allow-ance of 2,500 shares of common stock to interests inferior to the claims of the bonds.

The objections of the debtor are, as follows:

(a) Exception is taken to the provision that the property of the reorganized company shall be leased to the Seaboard; (b)

Exception is taken to the use of the so-called "Kennedy Formula" as a basis for the computation of the earnings under this lease; (c) Exception is taken to the provision of the plan that a sum not exceeding $1,100,000 taken from the estate should be spent for the betterment and rehabilitation program proposed for the debtor by the Seaboard; (d) Exception is taken to the allotment of only 2,500 shares of common stock in the new company to the present holders of the debtor's first preferred stock on a pro rata basis; (e) Exception is taken to the use of the "Kennedy Formula" as a basis of accounting with respect to the operation of the debtor's property by the Sea-board from August 1, 1946 until the effective date of the plan.

Regardless of objections, and whether or not any objections were filed, the Court may approve the plan only if satisfied, as required by Section 77 of the Bankruptcy Act, Title 11 U.S.C.A. § 205, sub. e. The Court is satisfied that it complies with these statutory requirements and that it is fair and equitable.

None of the objectors, in their objections as filed, seem to think the plan is fair and equitable. The bondholders feel that they should have all of the new capitalization and that the old preferred stockholders are entitled to nothing. On the other hand, the stockholders take the position that they should receive more of the common stock or securities of the new company than was allotted to them by the plan.

In spite of the allocation of 2,500 shares of common stock in the reorganized company to the holders of the first preferred stock, in the opinion of the Court the Plan accords fair and equitable treatment to the bondholders. It is true that the bondholders' interests were secured by a first mortgage and the bonds, together with simple interest thereon, amounted to approximately $3,600,000 as of January 1, 1949. According to Wyer's report to the Commission, the properties of the debtor had a value of $3,552,399. The capitalization of the new company amounts to only $3,400,000. If this were the whole picture, it might be argued that fair and equitable treatment would require that the old bond-

holders be given the new capitalization in its entirety. It must be remembered, however, that in addition to the bonds and stock allocated to them under the plan, the bondholders will also receive $630,000 in cash as well as the benefits of the betterment and rehabilitation program. Each bond, together with interest due thereon as of January 1, 1950, is worth approximately $2,135. In return for this, the Plan gives each bondholder $2,160 in cash and securities. While it is true that the stock in the new company may not have a true value equal to that assigned to it by the Commission, any such discrepancy in value is more than compensated for by the absolute control of the reorganized company which is vested in them under the provisions of the Plan.

The Plan is also fair and equitable in its treatment of the first preferred stockholders. In objecting to the allocation of only 2,500 shares of common stock to them, they apparently overlook the fact that they would have been unable to realize anything on their stock upon a dissolution or liquidation of the debtor until and unless the bondholders were paid in full the amount of their claim. As previously stated, the amount of the bondholders' claims as of January 1, 1949 totalled $3,600,000, while the properties upon which these bonds were first liens had a value according to Wyer's report of only $3,552,399. Therefore, under the old capital structure, the first preferred stock was of little or no value. The fact that Mr. Simpson obtained all of the first preferred stock of the debtor for $5,000 is further evidence of its true value.

Therefore, with respect to those objections which complain of the plan on the grounds that it is unfair or inequitable, the Court is of the very definite opinion that such objections are without merit. When viewed in the light of all objections filed, the plan is both fair and equitable to all parties concerned.

With respect to the specific objections of the debtor and the old preferred stockholders, which are based on the lease to the Seaboard, the use of the "Kennedy Formula", the inclusion in it of the so-called Florida arbitraries, and the allocation to the betterment and rehabilitation program of $1,100,000, the Court is impressed with the fact that, while the Court has a statutory duty in connection with passing upon the plan, these four objections concern matters particularly within the knowledge of the Interstate Commerce Commission, which is a body of experts in the field of railroad reorganization. The Commission has made an extended study of these problems, not only in this, but in similar cases. In this case these same questions have been extensively explored at two hearings at which all parties in interest were represented. After such careful exploration, these grounds of objection were fully discussed in lengthy opinions by the Interstate Commerce Commission. See 271 I.C.C., page 417 et seq.; 271 I.C.C., page 754 et seq.

As stated, there is also a specific exception to the use of the "Kennedy Formula" as a basis of accounting with respect to the operation of the debtor's property by the Seaboard from August 1, 1946 until the effective date of the plan—the interim period of operation. The Commission's decision on the use of the "Kennedy Formula" during this interim period of operation is not a part of the plan, and is not properly before the Court on the objections to the plan. If that formula is to be used under the plan, however, it is perfectly logical, fair and equitable, that it should be the basis for accounting used during the interim operations.

In passing upon these questions, the Court is strongly impressed by the reasoning of the Interstate Commerce Commission. On the hearing before the Court, no evidence or argument has been advanced which is of sufficient weight to refute such reasoning. The Court, therefore, adopts the reasons set forth in the Commission's opinions as the basis for its decision on these objections.

For the reasons above enumerated, the Court is of the opinion that the plan must be approved.

Order Approving Plan of Reorganization

The Plan of Reorganization (hereinafter referred to as the Plan) for Georgia, Florida & Alabama Railroad Company (hereinafter called the Debtor) was approved by the Interstate Commerce Commission (hereinafter called the Commission) in its report dated November 17, 1948, as modified by its supplemental report of July 6, 1949. The Plan, by reference thereto, is made a part of this order.

By order of this Court, dated September 7, 1949, a hearing on the Plan was held on November 29, 1949. Oral arguments were made and written briefs were filed. Having carefully considered the entire record in the proceedings, the transcript of all hearings before the Commission, all exhibits there produced, the exceptions of certain parties to the Plan, the evidence produced at the hearing, the arguments and briefs submitted by counsel, and the Court having filed an opinion contemporaneously with this order approving the Plan,

The Court finds:

1. The findings and conclusions of the Commission stated in its Report, dated November 17, 1948, as modified by its supplemental report of July 6, 1949, are supported by evidence and are in accord with legal standards, are correct in fact and law, and are adopted as findings and conclusions of this Court, as fully as if set out at length herein.

2. The Plan:

(a) includes provisions modifying and altering the rights of creditors of the Debtor;

(b) provides for fixed charges in such an amount that, after due consideration of the probable prospective earnings of the property in the light of its earnings, experience and all other relevant facts, there will be adequate coverage of such fixed charges by the probable earnings available for the payment thereof;

(c) provides adequate means for the execution of the Plan; and

(d) in all other respects complies with provisions of subsection b of Section 77 of the Bankruptcy Act, as amended.

3. The Plan is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders, and provides for the payment of all costs of administration and all other allowances made or to be made by this Court by the use of the following language: "Expenses of reorganization, and in connection with the proceedings and plan, as allowed by the court, subject to the provisions of Section 77 of the Bankruptcy Act, shall be paid in cash."

4. (a) By order entered September 7, 1949, this Court required that each and every individual and corporation having, or desiring to present, any claim for compensation for services rendered or for expenses (including reasonable attorneys' fees) either under Clause (12) of Subsection c of Section 77, or otherwise, should file such claim in the form of a petition in the office of the Clerk of this Court on or before November 14, 1949, such petitions to cover all such services rendered and expenses incurred up to and including September 30, 1949; and said order further provided that a copy of each such petition should be transmitted by the Clerk of this Court to the Commission for the fixing of a maximum limit with respect to the amounts to be allowed for such compensation and expenses. Petitions for such allowances have been so filed by numerous parties to this proceeding, have been duly transmitted to the Commission and are now pending before the Commission. No payments of compensation or expenses prayed for by said petitions shall be made by the Debtor or by any corporation or corporations acquiring the assets of the Debtor, except in such amounts as may hereafter be approved as reasonable by order of this Court within such maximum limits as shall have been fixed by the Commission. No payment of expenses or fees incident to the reorganization for the period through September 30, 1949, shall be made by the Debtor, or

any corporation or corporations acquiring the assets of the Debtor to any person except as prayed for in the petitions referred to in this paragraph, subject to the maximum limits to be fixed by the Commission and the actual amounts to be fixed by further order of this Court.

(b) Such additional amounts as may be required to be paid by the Debtor or any corporation or corporations acquiring the assets of the Debtor for services performed and expenses incurred (including reasonable attorneys' fees) after September 30, 1949, in connection with the proceeding, and the Plan, and in connection with the carrying out of the Plan, if it be finally confirmed, can not be ascertained at this time, but such amounts will be subject to the approval of this Court within maximum limits hereafter to be fixed by the Commission.

5. By order entered September 29, 1947, this Court divided the creditors and stockholders of the Debtor into classes.

6. This Court has jurisdiction of the subject matter of these proceedings and of the Debtor and its properties, creditors and stockholders, and all other parties having claims against or interests in the Debtor or its properties.

7. The foregoing findings shall be taken and deemed to be findings of fact, and in addition, to the extent appropriate, conclusions of law, and also orders.

Wherefore, it is ordered:

First: All objections heretofore filed or urged herein to the Plan, and all claims heretofore filed or urged herein for equitable treatment otherwise than through the Plan, are hereby severally overruled and denied, and the motions to remand the Plan to the Commission are overruled and denied.

Second: The Plan is hereby in all respects approved.

Third: The findings made by the Commission that the claims referred to in the Plan under the heading "Claims not affected by the Plan" will not be adversely and materially affected by the Plan are hereby affirmed. The Plan provides for the payment of all claims of the United States for taxes, and the United States is not a creditor on any claims for custom duties.

Fourth: The findings of the Commission, that the equities of holders of second preferred stock of the Debtor and holders of common stock of the Debtor have no value and nothing shall be distributable to them are hereby affirmed.

Fifth: The Plan shall be submitted in accordance with the provisions of said Section 77.

Sixth: The Court reserves full jurisdiction to construe the Plan, to cure any defect, supply any omission, and reconcile any inconsistency and to exercise all its powers under the Plan, all in such manner and to such extent as may be necessary or expedient, in order to carry out the Plan effectively.

Seventh: The Court reserves full jurisdiction for the purpose of finally fixing the actual amounts to be paid as compensation and expenses under the provisions of paragraphs 4(a) and 4(b) of this order.

Order Disallowing Claim of Trustees for the First Mortgage and Refunding Bondholders.

In a railroad reorganization proceeding under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, the claimants herein pursuant to order of this Court filed a claim for simple interest and interest on overdue interest installments alleged to be due under the provisions of the First Mortgage and Refunding 6% Gold Bonds, and the interest thereto attached. The interest coupons were payable semi-annually and represented 6% interest. While neither the Bonds nor the coupons contained any provision for interest on interest, it is admitted that the mortgage did contain an express covenant to pay interest on past due installments of interest. The Bonds and the mortgage securing them were executed in New York and provided for payment in an office in New York, which the debtor covenanted to maintain for that purpose. The property secured by the mortgage lies in the States of Georgia and Florida. At no time during the Receivership of the debtor nor during the present Reorganization has there been any court

order prohibiting the debtor from paying interest on its bonds.

The Debtor and its preferred stockholders filed their objections to this claim, objecting both to the allowance of simple interest and to the allowance of interest on interest. The objections to the allowance of simple interest were disposed of by this Court, and the order allowing simple interest was affirmed. Georgia, Florida & Alabama R. Co. et al. v. Bankers Trust Co. et al., 5 Cir., 1948, 170 F.2d 733. No parties other than the Debtor and its preferred stockholders oppose the allowance of this claim.

The record in this proceeding discloses that the Reorganization Committee representing the Bondholders of the Seaboard Air Line Railway Company bought 95% of the bonds of the debtor, paying therefor $750 per $1,000 bond, with nothing for accrued interest or interest on interest. Only one interest installment had been paid on these Bonds since the Seaboard went into receivership on December 23, 1930. At the time of the purchase of these Bonds in 1944, the Seaboard Air Line Railway Company, which was then in receivership, owed the debtor $807,687.67. The purchase was approved by the United States District Court for the Eastern District of Virginia, in which the Seaboard receivership proceedings were then pending. Guaranty Trust Co. of New York et al. v. Seaboard Air Line Ry. Co., 62 F.Supp. 207. The simple interest now owing to the claimant amounts to $1,986,250.

Under a plan of reorganization of the debtor, approved by the Interstate Commerce Commission on July 6, 1949, and approved by this Court as of this date, all of the distributable cash and securities of the reorganized company are allocated to the Bondholders except for 2500 shares of common stock. The allocation of these shares is expressly made dependent on the outcome of this claim. If interest on interest be allowed, these 2500 shares are also allocated to the Bondholders. If interest on interest be disallowed, these 2500 shares are allocated to the First Preferred Stockholders of the Company.

The claim for interest on interest must be disallowed. Under the law of Georgia, "Every contract shall bear interest according to the law of the place of the contract at the time of the contract, unless upon its face it shall be apparent that the intention of the parties referred the execution of the contract to another forum." Ga. Code Ann.1933, § 57-106. No intention to the contrary appears on the face of any of the instruments here involved. The mere fact that the land mortgaged lies in Georgia is not sufficient to take this case out of the operation of the above stated rule. Nor is the fact that the Bond begins "United States of America, State of Georgia", sufficient to show a contrary intention. This might raise a presumption that the contract was made in Georgia, except for the fact that it was here admitted by all concerned that the agreement was executed in New York. No case has been brought to the attention of the Court wherein either or both of these factors was held sufficient to show intention to have another law applied to the contract. In the present case, the application of this Code section requires that the mortgage and bonds here under consideration be governed by the law of New York respecting the validity of the covenant to pay interest on interest.

The New York law on this point has itself been often debated. After careful consideration, this Court can only conclude that under the law of New York, the covenant to pay interest on overdue interest is void and, therefore, unenforceable in the courts of Georgia. A thorough analysis of the New York law on this question is contained in the case of Empire Trust Company v. Equitable Office Building Corporation, 2 Cir., 1948, 167 F.2d 346. The New York law does not make any distinction between compound interest and interest on past due interest.

The claimant herein argues that even if the local law of New York voids covenants for interest on interest, the Courts of New York apply a different rule to agreements having contacts with other States. If this were true, the question of Georgia's acceptance or rejection of the Renvoi would then be material. No New York case has come to the attention of this Court which authorizes a holding that New York would apply Georgia law to a contract made

in New York and to be performed in New York, even though premises secured by an accompanying mortgage lie in Georgia. Whether or not Georgia would accept the reference back to its laws is, therefore, immaterial.

For these reasons this Court must conclude that the law of New York is applicable and that under New York law the covenant to pay interest on overdue interest is void.

 Even if the agreement were not controlled by the law of New York, the claim here under consideration would be disallowed. The case of Vanston Bondholders Protective Committee v. Green et al., 329 U.S 156, 67 S.Ct. 237, 241, 91 L.Ed. 162, clearly held that a claim for interest on interest, though valid under the applicable state law, should nevertheless be disapproved where approval would be inequitable. Mr. Justice Black, speaking for the majority of the Court in that opinion, said: "The touchstone of each decision on the allowance of interest in * * * reorganization has been a balance of equities between creditor and creditor, or between creditors and the debtor." Clearly, in this case, the Court, by approving this claim, would not be doing equity as between the bondholders and the debtor.

Seaboard Air Line Railroad Company owns approximately 95% of the outstanding bonds of the Debtor. These bonds were acquired at a cost of $750 per $1,000 bond. Though no interest on these bonds had been paid since February 1, 1931, nothing was paid for the right to collect such accrued interest. The bondholders have already been allowed simple interest which amounts to $1,986,250 as of December 31, 1949. As of that date the simple interest due on each $1,000 bond amounted to $1,135. Thus, the bondholders have already been allowed a fabulous return on a comparatively small investment which they have held only since 1944.

To allow such a claim would be even more inequitable when it is remembered that these bonds were bought by the Reorganization Committee representing the Bondholders of the Seaboard Air Line Railway Company, when said Company was indebted to the Debtor to the extent of $807,687.67. Thus, these bonds were bought by the secured creditors of an insolvent company, which was subsequently released from a very substantial debt owed to the present debtor. Clearly it seems inequitable for absolute control of the debtor to be thus acquired adversely to the interests of the First Preferred Stockholders. The equities of the parties are not altered simply because the bonds were purchased with the approval of the United States District Court for the Eastern District of Virginia. That Court expressly held that "the Georgia Court (referring to this Court) has the full jurisdiction of the subject matter of the reorganization of the G. F. & A. under section 77 of the Bankruptcy Act, including therein, of course, any and all questions that may arise affecting the proper treatment of the G. F. & A. bonds, in accordance with the provisions of the Act." Guaranty Trust Co. of New York et al. v. Seaboard Air Line Ry. Co., supra [62 F. Supp. 220].

If this Court were now to allow interest on past due interest, such allowance would wipe out all interest of the First Preferred Stockholders under the Plan of Reorganization of the Debtor, heretofore approved, and would exclude them from participation in the Plan.

The Court, therefore, concludes that the allowance of interest on interest in this case would be inequitable. The claim is disallowed.