In the Matter of the Accounting of BROOKLYN TRUST COMPANY, as Trustee under the Will of EDWIN F. KNOWLTON, Deceased.

In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Trustee under the Will of EDWIN F. KNOWLTON, Deceased.

Surrogate's Court, Kings County, December 26, 1950.

*Cullen & Dykman (William K. Allison* of counsel), for Brooklyn Trust Company, as trustee, petitioner.

*Richmond L. Brown* for City Bank Farmers Trust Company, as trustee, petitioner.

*J. Vincent Keogh, United States Attorney for the Eastern District of New York (Albert Parker* and *David Moses* of counsel), for J. Howard McGrath, *Attorney General of the United States,* as successor to the Alien Property Custodian, and another.

*J. Preston Mottur* for Edwin von Francken-Sierstorpff and another, respondents.

*Samuel Goldstein,* special guardian for Michael M. D. Francken-Sierstorpff, an infant, respondent.

RICHARDSON, S. The present proceedings were instituted by petitions filed by Brooklyn Trust Company and City Bank Farmers Trust Company, respectively, to render and settle their final accounts as trustees of two trusts created under the will of the testator, the late Edwin F. Knowlton, which was duly

admitted to probate November 14, 1898. The pertinent provisions of the will are as follows:

" Tenth: All the rest, residue and remainder of my property of every name and nature and wheresoever situated not required to satisfy the foregoing provisions of this my Will, including any of the gifts hereinbefore made that may lapse or fail to take effect, I dispose of as follows:

" Unless all the trusts hereafter provided for shall wholly fail to take effect, I direct my Executors hereinafter appointed to pay and deliver over one-half of my said residuary estate as near as they can conveniently arrive thereat, to the Brooklyn Trust Company and the balance thereof to the Franklin Trust Company [City Bank Farmers Trust Company is now successor trustee], both in the City of Brooklyn, in trust, if my said daughter shall survive me, to keep the same duly invested and to pay the income thereof semi-annually to my said daughter, during her natural life, said companies to so arrange, if possible, between themselves, that the semi-annual income shall be paid by one in January and July and by the other in April and October, and

" Upon her death I direct each of said Trust Companies to divide the Trust fund or estate held by it into as many equal shares as shall be the number of her children who shall survive her and those who shall have died leaving lawful issue who shall survive her, and to set apart one share for each of said children so surviving her and such issue of each deceased child; and

" To each of the said children surviving her who shall be in being at my death, to pay the income of the share set apart for him or her, to him or her during his or her natural life, and upon his or her death to pay the principal of such share in equal proportions to his or her lawful issue then living, if any, per stirpes and not per capita."

The testator died in 1898. His daughter had married and lived abroad until her death on July 16, 1929, leaving her surviving one child, a son Hans, born prior to the death of the testator, and no issue of any predeceased child or children. Upon her death, therefore, Hans became entitled to all of the income of the residuary estate as secondary life beneficiary pursuant to the terms of the will. He had married in Germany and at the time of his mother's death had two children, Edwin and Constance, who are still living. A third child born of the marriage had died leaving no issue. At his mother's death, he lived with his wife and children in Germany. Thereafter, he traveled extensively and later resided for a time in Liechten-

stein. In December, 1939, he entered this country as an immigrant, left the following month and returned in May, 1940, remaining in this country until his death. Shortly after the second arrival in this country he filed a form of intention to become a citizen of the United States. In December, 1941, he instituted an action for divorce in Idaho against his wife and, upon her default in appearance or answer, a decree of divorce was entered against her on January 27, 1942. Thereafter and on February 24, 1942, in the State of Florida, he entered into a ceremonial marriage with another woman. Of this second union a son Michael, was born on December 10, 1942, in the State of California, where concededly his father, the grandson of the testator, had been a resident from July 1, 1942, until the time of his death on December 5, 1944.

By vesting Order No. 3135, dated February 15, 1944 (9 Federal Register 2190), as amended on February 7, 1946 (11 Federal Register 3003), (hereafter referred to as the " Vesting Order "), the Alien Property Custodian, acting under authority of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, §§ 1-39), vested in himself all of the right, title and interest of Edwin and Constance in the two trusts created under the testator's will, upon findings that they were nationals of Germany. By Executive Order No. 9788 (Oct. 15, 1946, 11 Federal Register 11981), the Attorney General of the United States succeeded to the powers and duties of the Alien Property Custodian. Hereinafter, for convenience the term " custodian " will be used to refer to both the Alien Property Custodian and to the Attorney General as his successor.

The petitions, which were filed in 1945 and 1946, respectively, alleged that the lawful issue of Hans were his three children, Edwin, Constance and Michael. The custodian filed answers to the petitions denying that said three children were the lawful issue of Hans and alleging that the sole lawful issue of Hans were Edwin and Constance and that Michael was not one of the lawful issue within the purview of the language used in the will of the testator and had no interest in the trust funds herein accounted for. The special guardian appointed for the infant Michael, in replies filed by him, took the position that the principal was distributable in three equal shares to the three children and that the interest of the custodian was limited to the two-thirds interest of Edwin and Constance. This court found, in decisions dated August 10, 1948 (*Matter of Knowlton,* 192 Misc. 1032), that the decree of divorce entered in Idaho must be given effect and that as a result Michael was one of the

lawful issue of Hans and entitled to a one-third interest in the trusts. No question had been raised as to the status of Edwin and Constance as lawful issue.

Prior to the above-mentioned decision by this court, and on or about June 5, 1948, a notice of appearance was filed on behalf of Edwin and Constance who had not been parties to these accounting proceedings at the time of the trial, having been non-resident aliens. Their time to appear in the Brooklyn Trust Company proceeding had expired in 1945 and in the other proceeding in 1946. These two children moved to reopen the trial of the issues arising on the final accountings of the trustees and to permit them to be heard and to submit additional proof as to the facts not theretofore presented. These motions were denied by this court by decisions dated August 10, 1948, after a hearing on July 15, 1948. Upon appeal from orders which were entered to give effect to these decisions on September 7, 1948, the Appellate Division on December 19, 1949, filed an opinion affirming the orders "but without prejudice to a new application for the same relief on all the evidence in appellant's possession." The opinion of the Appellate Division went on to say: "The order appealed from did not represent an improvident exercise of discretion on the facts presented in the affidavits. While this court is not permitted to consider the new and additional facts presented because this is not an appeal on the facts from a final decree or order (Surrogate's Ct. Act, § 309), the appellants should be permitted to have the Surrogate consider the new and additional facts which were not before him at the time the original application was made." (*Matter of Knowlton*, 276 App. Div. 864.)

Concurrently with said motions, the custodian moved to strike out the appearances of Edwin and Constance. These motions were denied by this court by decision dated August 10, 1948; a portion of the decision denying such motions read in part as follows: "While parties, whose interests in an estate have been vested by the Alien Property Custodian, may not be necessary parties to a proceeding, nevertheless, they should be considered proper parties entitled to be heard on issues of fact or law which might diminish or increase the share in the estate which the Alien Property Custodian would receive under his vesting order and which they, in turn, might later hope to recover in whole or in part." (*Matter of Knowlton*, 198 Misc. 924, 925.) An appeal from the orders dated September 7, 1948, giving effect to this decision was dismissed by the Appellate Division (275 App. Div. 848, 849). The orders of the Appellate

Division thereon were thereafter duly made the orders of this court on August 8, 1949 and August 26, 1949, respectively.

Thereupon, in each proceeding a form of decree was served with notice of settlement incorporating and embodying the provisions of the decision of this court and thereafter, a further motion was made on behalf of Edwin and Constance for leave to renew their original motions and for an order upon such renewal motions opening the default of the respondents, Edwin and Constance, and granting them leave to answer, object or otherwise plead and be heard and to offer such additional proof as they might be able to adduce. This motion is opposed by the other parties hereto. The disposition of the above-mentioned decree and motion is now pending. The custodian, in addition to opposing such motion, in March, 1950, filed a motion on his own behalf for an order reopening the trial to permit the custodian to be further heard, to offer additional proof and to permit a reargument; this motion has since been withdrawn.

In the meantime, Brooklyn Trust Company, as general guardian of Michael, and the special guardian of Michael had entered into negotiations with the custodian with a view to a settlement of the issues raised as to the status of Michael as one of the lawful issue of Hans and as to Michael's right to share in the two trusts, the custodian having announced his intention to appeal from any decree which might hereafter be entered by this court directing distribution to the general guardian of the infant Michael, out of said trusts. Such negotiations have resulted in two compromise agreements of similar content — one signed by City Bank Farmers Trust Company as trustee, Brooklyn Trust Company as general guardian, the special guardian and the custodian, and the other by Brooklyn Trust Company as trustee, Brooklyn Trust Company as general guardian, the special guardian and the custodian. The compromise agreements are subject to the approval of this court and the special guardian has signed subject to the direction of the court ratifying his act in so signing. By the terms of these agreements, Michael is recognized as the lawful issue of Hans and as such entitled to a one-third distributive share of each trust (amounting to approximately $392,000 in the case of one trust and $395,000 in the case of the other); consent is given to the settlement of the accounts as filed; one third of the net balance of each trust is to be paid to the general guardian of Michael and two thirds to the custodian, and the general guard-

ian out of the funds so received is to pay to the custodian the sum of $75,000 from each trust. The compromise agreements also approve allowances in specified amounts to the special guardian and to certain attorneys, subject to the approval of this court. Motions have been made and are now pending for the approval of these compromise agreements and directing the entry of decrees carrying out the provisions thereof. The granting of these motions is opposed by Edwin and Constance.

Edwin and Constance have filed a claim with the Claims Bureau, Office of Alien Property, and also have instituted an action in the District Court of the United States for the Southern District of New York under subdivision (a) of section 9 of the Trading with the Enemy Act for the recovery of their property vested in the custodian by the vesting order. They have done this on the basis of the claim that they were Liechtenstein citizens and, therefore, not German enemy nationals at the time of the vesting.

The first and most important question to be determined in this involved situation relates to the motions made for the approval of the compromise agreements. If the compromise agreements are approved and become effective, Michael will become entitled to one third of the net balance in each trust, less the payments thereby agreed to be made to the custodian, and the claims of Edwin and Constance may thereby be seriously adversely affected. The court is therefore confronted with the problem of determining whether Edwin and Constance are necessary parties to any such agreements or whether their interests in the trusts have become vested in the custodian to such an extent that the custodian may deal with such interests in the manner provided in the compromise agreements without their consent or participation or even against their objection.

There is no doubt that the custodian has vested all of the right, title and interest of Edwin and Constance in and to the Knowlton trusts, whatever that interest may be and whether or not they were enemy or nonenemy nationals at the time of such vesting. There is likewise no doubt that this court has no power to review the validity of the vesting order (*Commercial Trust Co.* v. *Miller*, 262 U. S. 51; *Matter of Carrington,* 195 Misc. 442; *Matter of Bendheim,* 124 Misc. 424, affd. 214 App. Div. 716; *Matter of Dieudonne,* 186 Misc. 642; *Matter of Sielcken,* 167 Misc. 327). The remedy of any person not an enemy, who claims that his property has been unlawfully vested is set forth in subdivision (a) of section 9 of the Trading with

the Enemy Act, *supra;* this section reads in part as follows: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him * * * may file with the said custodian a notice of his claim * * *; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * *. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the * * * district court of the United States * * * (to which suit the Alien Property Custodian * * * shall be made a party defendant), to establish the interest, right, title or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * * or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, * * * as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian * * * or until final judgment or decree shall be entered against the claimant or suit otherwise terminated." If the claimant institutes a suit in equity to establish his interest in the vested property, then the above-quoted law provides that such property shall be retained in the custody of the custodian until satisfaction of any final judgment in favor of the claimant or until final judgment shall be entered against the claimant or the suit otherwise terminated.

In the present situation, suit has been instituted in a United States District Court by Edwin and Constance, on the claim that they were at the time of the vesting not enemy nationals but citizens of Liechtenstein, for the recovery of their property, and no judgment has as yet been entered therein. Under these circumstances it appears clear that subdivision (a) of section 9 of the Trading with the Enemy Act enjoins upon the custodian

the duty to " retain " the vested property in his custody until the occurrence of one of the events enumerated in said section, no one of which has yet occurred. Do the terms of the compromise agreements constitute a compliance by the custodian with this duty?

The interests of Edwin and Constance which have been vested are a right to two thirds of the net balance in each trust and a claim to the remaining one third; such claim is disputed by Michael. This court has rendered its decision with reference to such claim in favor of Michael, but no decree has been entered thereon. Edwin and Constance take the position that Michael should receive no distribution from the trusts because they maintain that he is not one of the " lawful issue " of Hans. The compromise agreements in effect give Michael approximately $317,000 from one trust and $320,000 from the other. Does such a compromise, which would substitute a right to $150,000 for a claim to approximately $787,000 ($392,000 plus $395,000), constitute a retention by the custodian of the claim to the whole $787,000 as required by subdivision (a) of section 9? In the opinion of this court it does not. It seems clear that the custodian is not retaining the original claim which he has seized but is substituting therefor an entirely different asset. Edwin and Constance may not succeed in ultimately establishing their claims, but they do presently have claims to approximately $787,000, which have not yet been pursued to final judgment; these claims are the assets which, among others, the custodian has vested. To convert such claims into a conceded right to $150,000, is not a retention of the original claims. If Edwin and Constance should succeed in their suit in the United States District Court after the compromise agreements had been carried out, the property which they would recover from the custodian would not be the property that had been vested.

This court has already held, by decision dated August 10, 1948, that while Edwin and Constance " may not be necessary parties to a proceeding, nevertheless, they should be considered proper parties entitled to be heard on issues of fact or law which might diminish or increase the share in the estate which the Alien Property Custodian would receive under his vesting order and which they, in turn, might later hope to recover in whole or in part." (*Matter of Knowlton*, 198 Misc. 924, 925, *supra*.) Appeals from the orders entered on this decision were dismissed by the Appellate Division (275 App. Div. 848, 849), the court saying in part: " By the petition it was alleged that the parties sought to be struck out were absolutely or contingently inter-

ested in the estate. That allegation was admitted by the answer of appellant.'' The effect of the above-mentioned decision of this court would be rendered nugatory, and it would be useless for Edwin and Constance '' to be heard on issues of fact or law which might diminish or increase '' their shares in the trusts, if the compromise agreements were put into effect.

In other words, the compromise agreements seem to this court to amount to a disposition by the custodian of the claims which have been vested in a way which is inconsistent with his duty to '' retain '' these claims in the manner and under the circumstances required by subdivision (a) of section 9.

Many cases have been cited by the custodian, the special guardian and others, to the effect that the act of vesting confers absolute title on the United States and by the same token leaves in the former owner '' no beneficial right to, or interest in, the property '' which has been vested (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51, *supra; Cummings* v. *Deutsche Bank,* 300 U. S. 115, 121; *United States* v. *Borax Consol.,* 62 F. Supp. 220; *United States* v. *The Antoinetta,* 153 F. 2d 138). But these were not cases where the claim had been asserted that the former owner was a nonenemy alien, where appropriate proceedings had been instituted under subdivision (a) of section 9 for the recovery of the property, and where the custodian had the obligation, under said section, to '' retain '' the property until the fulfillment of the conditions prescribed in said section. In cases, however, which deal with subdivision (a) of section 9 recognition is given to the limitation on the custodian's freedom of action which is imposed by subdivision (a) of section 9. As was said in *Stoehr* v. *Wallace* (255 U. S. 239, 245–246), '' That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy-owned, if adequate provision be made for a return in case of mistake, is not debatable. (*Central Union Trust Co.* v. *Garvan, supra.*) There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized; and the practice has been the other way. The present act commits the determination of that question to the President, or the representative through whom he acts, but it does not make his action final. On the contrary, it distinctly reserves to any claimant who is neither an enemy nor an ally of an enemy a right to assert and establish his claim by a suit in equity unembarrassed by the precedent executive determination. Not only so, but pending the suit, which the claimant may bring as

promptly after the seizure as he chooses, the property is to be retained by the Custodian to abide the result and, if the claimant prevails, is to be forthwith returned to him. Thus there is provision for the return of property mistakenly sequestered; and we have no hesitation in pronouncing it adequate, for it enables the claimant, as of right, to obtain a full hearing on his claim in a court having power to enforce it if found meritorious." In *Central Trust Co.* v. *Garvan* (254 U. S. 554, 569) which is referred to in the above-quoted excerpt, it is stated: " But this act did not repeal § 9, which is amended by the later Acts of July 11, 1919, \* \* \* and as we have said, provides for immediate claim and suit and requires the property in cases of suit to be retained in the custody of the Alien Property Custodian or in the Treasury of the United States to abide the result. The present proceeding gives nothing but the preliminary custody such as would have been gained by seizure. It attaches the property to make sure that it is forthcoming if finally condemned and does no more."

Likewise in *Standard Oil Co.* v. *Markham* (57 F. Supp. 332) which involved a suit under subdivision (a) of section 9 the court said, at page 334:

" The statute, when suit is brought to recover property seized by the Custodian, requires him to retain the same, pending a judicial determination of the merits of the issues. \* \* \*

" The existence of a right upon the part of claimant to regain his wrongfully seized property, and to do so completely, is essential to the constitutionality of the Act.

" ' Section 9 (a) must be broadly construed to give effect to its remedial purpose.'

" So, here, plaintiffs' rights would be largely imaginary, if the Custodian, contrary to his statutory obligation to retain the whole of their property, until final judgment and decree, were ruthlessly, bit by bit, to fritter it away, and in a manner of his own choice.

" Should any such conduct be threatened, or be in the Custodian's contemplation, I have no doubt that the Court in which a recovery action has been begun would have full power, and be under a compelling duty, by way of coercion upon the Custodian, to preserve the property intact."

Also, in *Draeger Shipping Co.* v. *Crowley* (49 F. Supp. 215) the court said (p. 219) with reference to subdivision (a) of section 9: " Congress, in which the ultimate power to declare public policy is vested, makes it mandatory that the Alien Property Custodian should in case of suit brought against him

retain the property in his possession until final disposition of the suit. He would be acting without jurisdiction and beyond the powers delegated to him were he to do otherwise. Congress has determined that there shall be a judicial remedy afforded to all but enemies and allies of an enemy in cases of erroneous seizure of their property notwithstanding the existence of war. * * * The motion to dismiss the complaint is accordingly denied and the application of the plaintiffs granted only to the extent of directing the defendant not to liquidate the business of the company or sell its stock pending the determination whether they are nationals of a foreign or enemy country, or whether the seized property is owned or controlled by a foreign or enemy country or national thereof. This disposition of the motion follows the specific direction of Congress in Section 9 (a) that the property shall be retained by the Custodian until the suit is terminated, without affecting any rights of the plaintiffs under the Constitution and without any apparent interference with the successful prosecution of the war.''

In view of the fact that the provisions of the Trading with the Enemy Act have been broadened in some respects in recent years to permit the seizure of property of the national of any foreign country and not only of an enemy national, it might be argued that the benefits of subdivision (a) of section 9 were no longer available to a foreign national, even though not an enemy national. That this argument is not valid is held in effect in *Clark* v. *Uebersee Finanz-Korp.* (332 U. S. 480) where it is said at page 489: '' We believe a more harmonious reading of § 2, § 5 (b) and § 9 (a) is had if the concept of enemy or ally of enemy is given a scope which helps the amendment of 1941 fulfill its mission and which does not make § 9 (a) for the first time in its history and contrary to the normal connotation of its terms stand as a barrier to the recovery of property by foreign interests which have no possible connection with the enemy.''

This court is accordingly of the view, in the light of the foregoing, that the custodian is without power to enter into the compromise agreements because of the pendency of the suit brought in the United States District Court by Edwin and Constance pursuant to the provision of subdivision (a) of section 9 of the Trading with the Enemy Act, and that, therefore, this court can not approve them.

There is another point to be considered in connection with the compromise agreements. The authority of this court to approve the compromise agreements is found in section 19 of

the Decedent Estate Law. Subdivision (a) of the section provides as follows: " (a) The supreme court or the surrogate's court having jurisdiction of the estate or property involved may authorize executors, administrators and trustees to adjust by compromise any controversy that may arise between different claimants to the estate or property in their hands to which agreement such executors, administrators or trustees and all other parties in being who claim an interest in such estate and whose interests are affected by the proposed compromise shall be parties in person or by guardian as hereinafter provided." The question, therefore, arises whether Edwin and Constance are parties who claim an interest in the two trust estates involved in these proceedings and whose interests are affected by the proposed compromise agreements and who therefore should be parties as a condition precedent to the approval by this court of such agreements.

(a) This court has already held that Edwin and Constance should be considered as proper parties in these proceedings entitled to be heard on issues of fact or law which might diminish or increase the share in the estate which the custodian would receive under his vesting order and which they, in turn, might later hope to recover in whole or in part. The Appellate Division, in dismissing the appeal from the order entered on this decision, noted that the custodian in its answer admitted that Edwin and Constance were absolutely or contingently interested in the estate. (*Matter of Knowlton*, 275 App. Div. 849, *supra*.)

(b) The claim which Edwin and Constance have asserted by instituting suit under subdivision (a) of section 9, and the possibility of their successful prosecution of that suit, would appear to make them interested parties to the extent of requiring their consent to the proposed compromise agreements. Clearly the custodian has not vested the rights which they have under said section to bring suit or their right of recovery pursuant to such suit.

(c) *Matter of Jefferies* (155 Misc. 464, 466, affd. 247 App. Div. 747) with respect to section 19, indicates that all persons " who have potential interests in, or claims to, the property of the decedent as statutory distributees and beneficiaries under the will " are entitled to be parties to any compromise agreement. In *Matter of Lachat* (184 Misc. 486, 489) it was stated, in reference to a compromise under section 19, as follows: " The first ground of denial is that all the necessary persons interested have not joined in it and because the settlement is

vigorously opposed by the Attorney-General, by the Alien Property Custodian and by the Public Administrator representing the interests of certain of such persons. Each of these officials has been brought into the case, under the requisite practice, in order to represent unknown next of kin or known possible next of kin whose legal status has not yet been determined.'' In the present case the legal status of Edwin and Constance, and their rights under subdivision (a) of section 9, have not yet been determined. The court went on to say (184 Misc. 490): '' But in all of these forms of settlements the rights of next of kin or other persons who would be affected by the admission or rejection of the will and by the terms of the settlement cannot be ignored, disregarded or destroyed by an arrangement between less than all the persons interested in the estate, either under the propounded instrument or under prior will or by intestacy. The objection here by the official representatives to the proposed settlement is alone sufficient ground for the denial of the application to deny probate to the propounded instrument in advance of the completion of the trial.''

The foregoing leads the court to the conclusion that the interests of Edwin and Constance are affected by the proposed compromise agreements and that this court cannot under section 19 authorize said agreements, in the present state of the case, unless they are parties.

There is also to be decided the motion made on behalf of Edwin and Constance for leave to open their default, plead and object to the accounts and to reopen the trial heretofore had to permit them to be heard on the issues therein and to offer such additional proof, not heretofore presented, as they may be able to adduce. That part of the motion to open the default, plead and object to the accounts is granted (*Boughton* v. *Flint,* 74 N. Y. 476, 486; *Matter of Turfler,* 78 Hun 258; *Matter of Melzak,* 153 Misc. 600, 605; *Matter of Brady,* 155 Misc. 242, 245) to the extent that the objections, if any, be served upon the attorneys for the parties who have appeared herein and be filed in court within sixty days from the date of service of a copy of the order to be entered herein upon the attorney for the moving parties.

The petitions in the accounting proceedings pray for a direction that the trust estate be distributed in equal shares to Edwin, Constance and Michael, as the lawful issue of Hans, or to such person or persons as may be entitled to receive their respective interests or portions. Such petitions allege that Michael is the lawful issue of Hans. Edwin and Constance, even

though enemy aliens, are entitled to defend in this proceeding. Subdivision (b) of section 7 of the Trading with the Enemy Act provides in part: *" And provided further,* That an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him.*"* Their right to defend could not be less if they were not enemy aliens but nationals of a foreign nonenemy country. And where an issue of this character is pending, i.e., to determine their relative interests in relation to a third party and not in relation to the custodian, it is the belief of this court that Edwin and Constance are proper parties thereto, as well as the custodian, and that the vesting order has not deprived them of this right (*The Pietro Campanella* [*The Euro*], 47 F. Supp. 374 [1942]; *United States* v. *The San Leonardo,* 51 F. Supp. 107 [1942]; *Hamburg-American Line* v. *United States,* 168 F. 2d 47, 55 [1948]; *United States* v. *The San Leonardo,* 71 F. Supp. 852 [1947]; *The Pietro Campanella* [*The Euro*], 73 F. Supp. 18, 30 [1947]). Any recovery made would, of course, be vested in the custodian pending adjudication of the suit which has been instituted in the United States District Court for the Southern District under subdivision (a) of section 9.

The two remaindermen, Edwin and Constance, appealed some time ago from an order of this court which denied their motions (a) to reopen the trial of the issues arising in the final accounting of the trustee; (b) to permit them to be heard and to submit any additional proof as to the facts not theretofore presented. The original order was affirmed, but without prejudice to a new application for the same relief on all the evidence in appellants' possession. In affirming the Appellate Division said: " While this court is not permitted to consider the new and additional facts presented because this is not an appeal on the facts from a final decree or order (Surrogate's Ct. Act, § 309), the appellants should be permitted to have the Surrogate consider the new and additional facts which were not before him at the time the original application was made." (276 App. Div. 864.) It would appear that the Surrogate can best consider such new and additional facts at a hearing where they can be presented in orderly fashion and questions as to competency readily determined. Accordingly, the matter may be restored to the calendar for that purpose on the usual notice.

Submit order, on notice, accordingly.