In the Matter of the Accounting of CHRISTIAN A. VON RUMOHR et al., as Temporary Administrators of the Estate and as Executors and Trustees under the Will of ELIZABETH S. VON RUMOHR, Deceased, Respondents. HERBERT BROWNELL, JR., as Attorney General of the United States, Appellant.

Fourth Department, November 17, 1954.

*John O. Henderson, United States Attorney for the Western District of New York (Irwin A. Seibel, Dallas S. Townsend, R. Norman Kirchgraber, James D. Hill* and *George B. Searls* of counsel), for appellant.

*Donald C. Lubick* and *Raymond W. Conklin* for respondents.

*William B. Mahoney,* special guardian, respondent.

WHEELER, J. This appeal from a decree of the Surrogate's Court of Erie County, judicially settling the petitioners' accounts as temporary administrators and executors of and trustees under the will of Elizabeth S. von Rumohr, deceased, concerns the proper allocation of expenses incurred by the executors in the administration of the estate.

In 1937, in Buffalo, New York, Mrs. von Rumohr, a resident of Germany, executed a last will and testament disposing of her " United States estate ". Following her death in 1945 the will was probated in the Surrogate's Court of Erie County. In October, 1943, the Alien Property Custodian (hereinafter referred to as " Custodian "), acting under the authority of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*), vested in himself for the benefit of the United States 1,000 shares of the capital stock of the Morland Company, a Delaware corporation, which stock was owned by Elizabeth S. von Rumohr.

As a result of this vesting order the United States acquired title to those shares " as completely as though by conveyance, transfer or assignment". (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51, 56.) She was divested of " every right in respect of the * * * property ". (*Cummings* v. *Deutsche Bank,* 300 U. S. 115, 120–121.)

Following the cessation of hostilities of World War II, Mrs. von Rumohr, in August of 1944, filed a claim with the Custodian for the return of the 1,000 shares of Morland Company stock. She died testate, a resident of Germany, before any determination of her claim had been made. In August, 1948, her executors filed a claim for the same shares of stock, and on the same date Christian von Rumohr, a son of testatrix and the only legatee who was a citizen of the United States, filed a claim in his individual capacity for his interest as a life beneficiary in one fifth of the 1,000 shares, or 200 shares. The executors' claim has not been allowed and is still pending. The Custodian allowed a return in favor of Christian and his issue of 200 shares of the Morland Company valued at approximately $125,000 — that being the share to which they would have succeeded by reason of the death of the testatrix had the vesting not occurred. However, the Custodian provided that the return should be made to the trustees (and not the executors) of the will, rather than to Christian individually.

Insofar as here pertinent, decedent's will leaves her residuary estate to her executors to be divided and held in separate trusts for each of her five children. Thus, under the terms of the will Christian von Rumohr is given a life interest in one fifth of the estate, his issue being vested with the remainder. With the exception of Christian and his issue, all the living beneficiaries of the trust were residents and nationals of Germany.

Assuming the legality of the 1943 vesting order, as we think we must (*Matter of Carrington,* 195 Misc. 442; *Stoehr* v. *Wallace,* 255 U. S. 239), it necessarily follows that the transfer of any portion of the shares was not based upon any legal or enforcible right thereto, but, rather, upon moral or equitable grounds. As such, the transfer of the 200 shares appears to be little more than a gift to Christian and his issue.

In accomplishing this objective, the Custodian was confronted with a somewhat novel problem. Of course, he looked to the will as a source of Christian's equitable claim to any part of the shares. As a practical matter, he could not turn the 200 shares back to the estate, as in that event the executors, in administering the estate in accordance with the terms of the will, might

possibly be forced to honor the claim of the other enemy alien legatees, thus defeating the fundamental purpose of the transfer of the 200 shares as contemplated by the Custodian. As Christian's individual claim as beneficiary was only for his life interest in one fifth of the vested shares, it is obvious that, unless the Custodian acted as trustee, paying over the income to Christian, that some sort of trusteeship would necessarily have to be employed. The fact that the trustee arrangement set up by the testatrix was used as a ready-made vehicle to accomplish the very relief requested by Christian in his individual capacity does not, in our opinion, constitute a partial return of estate assets, as is claimed by the executors. Thus, at the time of testatrix' death in 1945 her estate consisted of nothing more than the property which the Custodian had not vested during her lifetime, and which later came into the possession of the executors, amounting to substantially $50,000.

Following decedent's death, the Custodian made a further order by which he vested in himself the interest of all the enemy alien beneficiaries in being, in the estate, except those of Christian and his issue. The Attorney General, as successor to the Alien Property Custodian, being entitled to receive for the United States four fifths of the estate, is now asking that the trust erected for the benefit of Christian and his issue (the returned 200 shares) be charged with the expenses incurred in prosecuting the claim which Christian as beneficiary had filed for the return of those particular shares. This the Surrogate has failed to do.

The decree appealed from provides that all payments (which included executors' commissions on the 200 shares and the expenses incurred in recovering them), as well as all additional administration expenses to be incurred, should be paid out of the $50,000 in the hands of the executors, and that " no part thereof is specially chargeable against the trust for the benefit of Christian von Rumohr ". The expenses to date as shown by the account amount to some $30,000. The special counsel employed by the executors to prosecute their claim for the return of 1,000 shares of Morland Company stock, also, at the same time conducted negotiations with respect to Christian's individual claim.

Under these circumstances, the allowance by the Custodian of Christian von Rumohr's personal claim for the life interest bequeathed him by his mother's will in 200 shares of the 1,000 shares of Morland Company stock vested in the Custodian prior to the death of testatrix, should not be considered as a partial

allowance of the claim by the executors for the vested shares.

Further, the circumstances and conditions under which the individual claim was allowed are decisive that the 200 shares passed neither into nor through the hands of the executors, but directly from the possession and title of the United States to the trustees of the trust for the benefit of Christian and his issue. These shares never were nor became a part of the estate funds held by the executors, and should not, of course, be charged with items of general estate expense. Conversely, and by the same token, the estate assets should not be charged with the expense which may be found to have been definitely or fairly incurred in securing the transfer of those shares. Similarly, as the 200 shares of stock were never an estate asset, there should be no executors' commissions allowed on the value of those shares.

It may be that the executors will eventually be successful in their claim for the remaining 800 shares; if so, any inequities in the allocation of expense should be adjusted upon a further accounting. The decree appealed from does not make provision for such an adjustment, the expenses referable to the transfer of the 200 shares having been charged to the general or " unvested " estate funds.

It is our conclusion that the 200 shares transferred directly to the trustees, who had been substituted as claimant in the personal claim of Christian, was not a return of those shares to the executors, and that the expenses definitely or fairly incurred in the transfer of those shares were erroneously charged to the " unvested " assets in the hands of the executors, without allocation of any part of the expense to the trust erected for the benefit of Christian and his issue. The estate, therefore, should be reimbursed by the trustees for disbursements advanced by the executors out of the general estate assets which may definitely or fairly be said to have been incurred in securing the transfer of the 200 shares. The item of $12,644.40 (10% of the value of the 200 shares) allowed and approved by the Custodian as commissions or fees of counsel who secured the transfer of these shares of stock is definitely referable to the 200 shares alone, and is the sole burden of Christian's trust. It may be that some of the disbursements of special counsel set forth in Schedule A annexed to the petition could be fairly allocated to the personal claim which was allowed; however, that is not decided here, but left for determination upon facts which may be presented in connection therewith.

The matter should be remitted to the Surrogate for the purpose of entering a decree consistent herewith.

All concur. Present — VAUGHAN, J. P., KIMBALL, PIPER, WHEELER and VAN DUSER, JJ.

Decree directed to be modified on the law and facts in accordance with the opinion, and, as modified, affirmed, without costs of this appeal to any party and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion.