In the Matter of the Accounting of BROOKLYN TRUST COMPANY, as Trustee under the Will of EDWIN F. KNOWLTON, Deceased.

In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Trustee under the Will of EDWIN F. KNOWLTON, Deceased.

Surrogate's Court, Kings County, July 21, 1955.

*William K. Allison* and *Harold A. Meriam, Jr.,* for Brooklyn Trust Company, as trustee, and as guardian of Michael Sierstorpff, an infant, petitioner.

*Richmond L. Brown* for City Bank Farmers Trust Company, as trustee.

*Leonard P. Moore, United States Attorney for the Eastern District of New York (John W. Wydler, James D. Hill* and *Irving Jaffe* of counsel), and *Dallas S. Townsend* for Herbert Brownell, Jr., Attorney General of the United States of America, as successor to the Alien Property Custodian.

*Samuel Goldstein,* special guardian for Michael Sierstorpff, an infant, respondent.

*J. Preston Mottur* for Constance Sierstorpff and another, respondents.

*Halpin, Keogh & St. John* for John Baer, respondent.

*Herman P. Rosenblatt* for Jacob L. Feiner and another, respondents.

*Otto C. Sommerich* and *Benjamin Busch* for Paul Hollos and another, respondents.

*Edmund W. Bokat* and *Janet Perlman* for Edward P. Levy, respondent.

*Harry Krauss* for Joseph L. Rosenberg, respondent.

*Hodges, Reavis, McGrath, Pantaleoni & Downey* for Securities Administration and Trading Company, respondent.

OLLIFFE, Justice of the Supreme Court and Acting Surrogate. A second compromise agreement has been submitted for approval in these accounting proceedings, the first having been rejected by the court by decision dated December 26, 1950 (200 Misc. 252). No order has been entered on such decision. It was therein held that Edwin and Constance, surviving children of the first marriage of the deceased secondary life-income-beneficiary, were necessary parties to such an agreement, notwithstanding the fact that their shares of the trust remainder herein had been vested by the Alien Property Custodian. The percentage of their shares in this estate became fixed by a decision of this court dated August 10, 1948 (192 Misc. 1032), holding that Michael, a child of the deceased income-beneficiary's second marriage, was lawful issue and, therefore, entitled to one third of the remainder herein. No decree was entered thereon.

Edwin and Constance were accorded the right to open their default, plead and object to the account (200 Misc. 252, 266), and the trial of the issues respecting the status of Michael was authorized to be reopened to permit them to introduce new and additional facts which were not before the court when the issues were tried (276 App. Div. 864; 200 Misc. 252, 267). Those rights have not been exercised by Edwin and Constance. Instead they have joined in the present agreement, under the terms of which they are each to receive from the share of their infant half brother, Michael, the sum of $125,-000, in exchange for which, among other things, they assign to Michael's guardian all of their interest asserted by them to any of the trust fund to be paid to Michael's guardian.

Constance had, however, executed two instruments, in assignment form on March 16, 1948, before a United States Consul at Geneva, Switzerland, authorizing the trustees to pay out of her share in this estate the total sum of $205,000 to a Swiss corporation; Edwin executed a similar instrument on December 13, 1948, before a United States Consul at Zurich, Switzerland, whereunder he empowered one of the trustees to pay from his share to a Liechtenstein corporation the sum of $200,000. The existence

of those assignments apparently was not called to the court's attention in the prior proceeding, as the decision therein did not discuss the necessity of the assignees thereunder being necessary parties to a compromise agreement. The said assignees have, in turn, assigned sub-shares of their assignments to others, some of whom have still further assigned such sub-shares. Those assignees, and sub-assignees contend they are necessary parties to the compromise agreement, while all of the other parties contend to the contrary.

In addition to the said assignments, Constance also entered into an agreement on March 16, 1948, at Geneva, Switzerland, whereunder she agreed to pay an attorney a specified sum of money for legal services rendered and to be performed by him, and the said fee was to "become due and payable to you if and when the Alien Property Custodian divests my share of the funds that I inherited from the estate of Edwin F. Knowlton." That agreement was assigned by the attorney on July 18, 1950, as collateral security for a loan to a corporation. That attorney-assignor executed a waiver and consent to the entry of an order approving the two compromise agreements herein. His assignee did not, however, execute a similar waiver and consent but neither did he interpose any objections. In any event, however, the said agreement merely created a debtor-creditor relationship, the provisions thereof not spelling out either a legal or equitable assignment (*Hinkle Iron Co.* v. *Kohn,* 229 N. Y. 179; *Donovan* v. *Middlebrook,* 95 App. Div. 365), nor did it create an equitable lien, and hence neither the attorney-assignor nor his assignee is a necessary party to the agreements herein.

Constance's assignment to Industrial Participations and Trading Company, Ltd., Inpatra, is of "*all* (emphasis supplied) my right title and interest, * * * in and to the remainder interest or any other interest in the whole or any part of the estate of Edwin F. Knowlton," but authorizes the City Bank Farmers Trust Company, as trustee, to pay to said assignee the sum of only $55,000. The said instrument further provides, "It is understood that this assignment shall have no force or effect until my share of the funds of the estate and/or trusts created by the last will and testament of the said Edwin F. Knowlton are released and divested by the Alien Property Custodian of the United States of America." Constance's other assignment likewise runs to the same corporation and is also of "*all* (emphasis supplied) my right title and interest" but limits the Brooklyn Trust Company, as trustee, to pay-

ment to said assignee of the sum of $150,000; and further provides, "It is understood that this assignment shall have no force or effect until the share of my brother, Edwin * * * of the funds of the estate and/or trusts created by the last will and testament of the said Edwin F. Knowlton, deceased, are released and divested by the Alien Property Custodian of the United States of America."

Edwin's assignment was to the Securities Administration and Trading Company (Establishment), and was also of *"all* (emphasis supplied) my right title and interest * * * in and to the remainder interest or any other interest in the whole or any part of the estate of Edwin F. Knowlton " but that, too, limited payment to the sum of $200,000, which the trustee, City Bank Farmer's Trust Company, was authorized to pay. It also contained the identical provision relating to divestment by the Alien Property Custodian as is present in the assignment executed by Constance to the same trustee.

Those provisions relating to release and divestment are characterized on the one hand as being conditions precedent to the right of the assignees' recovering anything under their assignments. On the other hand, however, it is urged that the language so employed is not a condition precedent to payment of the assignments from any source but is descriptive language of the conditions to which the interests assigned were subject. Those contentions have their root in some measure in the form in which the compromise agreement was prepared. It consists of two instruments in each of the two trusts accounted for herein; one of which is designated compromise agreement No. 2-A. Thereunder the trustees, Edwin, Constance, the Attorney General of the United States, as the successor in office of the Alien Property Custodian, and the general and special guardians of Michael agree that Michael is entitled to a one-third share of each trust; the sources of payment of compensation to the trustees, etc., are designated from either the trust or Michael's share in the estate; the remaining net balance of two thirds of the trust held for distribution to Edwin and Constance is to be paid to the Attorney General; the Attorney General is also to be paid $75,000 out of Michael's share in each trust, which sums are to be added to Edwin's and Constance's shares and to be reserved by him and retained under conditions not relevant to the issues herein. It is further provided therein by paragraph 12 and agreed to by all the parties thereto, except the Attorney General, that the said agreement shall be ineffective unless a

further agreement be executed by the parties, other than the Attorney General, which " provides for the payment to Edwin and Constance of certain sums."

Pursuant to that provision all of the parties, except the Attorney General, entered into compromise agreement No. 2-B. Thereunder Edwin and Constance are to be paid the sums of $125,000 each from Michael's share, the payments to be made to their attorney, and if that manner be not feasible, then in such manner as the court shall direct by decree, subject to their attorney's lien, which Edwin and Constance represent is not less than a specified sum. Paragraph 2 thereof requires Edwin and Constance to discontinue their pending appeal in the civil litigation in the United States District Court, insofar as it concerns the trustees and the general guardian of Michael. Their joinder as parties defendant was sought in such litigation as well as an injunction restraining them from proceeding with the original compromise agreement, which relief was denied. The original litigation is discussed in 200 Miscellaneous 252, 260 *et seq.* It is apparent from the foregoing that these two instruments are not independent instruments but are interdependent, notwithstanding the evident desire of the Attorney General to eschew even the appearance of in anywise releasing and divesting any part of Edwin's and Constance's shares in this estate. Those shares were vested on February 15, 1944, by vesting order No. 3135, which was amended on February 7, 1946. The secondary life-income-beneficiary died on December 5, 1944. All of the assignments herein were, therefore, executed long after the shares of Edwin and Constance were vested.

Edwin and Constance, of course, contend that their shares have not been released or divested, and their assignees, therefore, are not necessary parties to the agreements. It is strenuously urged that a partial release and divestment of Edwin's and Constance's shares to the extent of $250,000 has been effected by the Attorney General through his participation in the agreement under which he is to receive the sum of $150,-000, and Edwin and Constance are to receive $250,000, both of which sums have their source in this estate; that Edwin and Constance on the one hand and the Attorney General on the other are each surrendering consideration in exchange for the benefits flowing to them; the Attorney General surrendering his right to rely upon evidence to be adduced by Edwin and Constance in support of their claim that Michael is not the lawful issue of testator, which, if established, would permit

the Attorney General to take possession of all the funds; and Edwin and Constance surrendering their claim of lack of status by Michael. In this connection, this court by decision dated August 3, 1951, accorded to the Attorney General the right to reopen the trial to submit proof with respect to the alleged fraud perpetrated upon the Idaho court and to the question of the public policy of this State regarding divorces procured in foreign States, upon constructive service, against nonresident enemy aliens. The Attorney General thereby was afforded relief similar in scope to that which was granted Edwin and Constance with respect to the right to establish their claims of the invalidity of the Idaho divorce procured by the deceased income-beneficiary and the consequent status of his son, Michael, as the lawful issue of testator.

Whether either the Attorney General on the one hand could establish such facts independently of Edwin and Constance, on the other hand, or vice versa, is doubtful as neither has availed themselves of the rights so extended to them. There is, however, no duty cast upon the Attorney General to prosecute a claim to the entire trust fund to a new trial judgment. Moreover, there is no allegation that Edwin and Constance fraudulently induced their assignees to accept the assignments upon the representation that they were entitled to the entire trust fund or that they agreed that they would prosecute to trial or appellate judgment a claim that Michael is not entitled to share in the estate. The assignments themselves are barren of such obligations. This court decided on August 10, 1948 (192 Misc. 1032), that Michael was entitled to a one-third share of the trusts. He was so alleged to have been by the Brooklyn Trust Company and the City Bank Farmers Trust Company, trustees herein under their petitions filed on August 4, 1945, and March 19, 1946, respectively. (200 Misc. 252, 266.) The assignees, therefore, had at least constructive notice of the existence of Michael before the assignments were executed. In the light of these facts, the Attorney General and Edwin and Constance were, apparently, unfettered in their abandonment of their joint claim of Michael's status. The consideration to be paid to the Attorney General and to Edwin and Constance is determined by the court to be a part of Michael's share, and did not result in a release or a divestment of Edwin and Constance's shares which were vested by the Alien Property Custodian.

The contention is advanced that when the assignments were given, all the interests which Edwin and Constance possessed

had already been seized by virtue of the vesting order issued under the Trading with the Enemy Act and that such interests thereby became the sole and exclusive property of the United States (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51; *The Antoinetta,* 49 F. Supp. 148, affd. *United States* v. *The Antoinetta,* 153 F. 2d 138, certiorari denied, *sub nom. "Italia" Societa Anonima Die Navigazione* v. *United States,* 328 U. S. 864, rehearing denied, 329 U. S. 821; *Matter of Carrington,* 195 Misc. 442, 443, 444), wherefore, the assignments are nullities. In that latter case it was held that " So long as the vesting order is effective the legatee has no interest to assign and consequently the petitioning assignee stands in no better position than the legatee herein ". Those holdings are equally applicable to the assignees herein insofar as they seek to become parties signatory to the compromise agreement, notwithstanding the fact that this court has held that the Alien Property Custodian had not vested Edwin and Constance's right under subdivision (a) of section 9 of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix) to bring suit thereunder or their right to recovery pursuant to such suit.

In *Sturchler* v. *Hicks* (17 F. 2d 321), it was held that an assignment of interest in property previously seized by the Alien Property Custodian, if established, was an assignment of a claim against the Government under section 203 of title 31 of the U. S. Code, which is known as the Assignments of Claims Act. Such act provides that all assignments of claims upon the United States to be valid must be executed after the allowance of the claim. Edwin's and Constance's claims have not been allowed. Their assignees, therefore, would have no standing to sue in the District Court for the return of their assignors' property, which vested in the custodian (*Societe Suisse Pour Valeurs De Metaux* v. *Cummings,* 99 F. 2d 387, 394). Technically, the assignees are not suing in any court, but their application to be made parties signatory to the compromise agreements would, in some measure, have that effect and would further hamstring the Attorney General.

The Assignments of Claims Act was enacted for the benefit of the Government to protect it from a multiplicity of claims (*Martin* v. *National Surety Co.,* 300 U. S. 588; *Goodman* v. *Niblack,* 102 U. S. 556, 560; *McKenzie* v. *Irving Trust Co.,* 323 U. S. 365, 369, affg. 292 N. Y. 347). The need therefor is evident from this case in which the Government's freedom of individual action was restricted by the holding that Edwin and Constance were necessary parties to any compromise agree-

ment. There is nothing in said decision, however, which even impliedly held that Edwin's and Constance's assignees, if any, were necessary parties to a compromise agreement. To subject the Government to the multiplicity of claims which the assignees have against their assignors would be violative of the spirit of the Assignments of Claims Act and unnecessarily further protract the settlement of this estate.

The Government's enforced association with Edwin and Constance in the compromise agreement brought forth in part a result apparently not within the court's contemplation as it held that Edwin and Constance were " proper parties entitled to be heard on issues of fact or law which might diminish or increase the share in the estate which the *Alien Property Custodian would receive under his vesting order* (emphasis supplied) and which they, in turn, might later hope to recover in whole or in part " (198 Misc. 924, 925, appeal dismissed, 275 App. Div. 848; 200 Misc. 252, 265). By those decisions Edwin and Constance were placed in a tactical position from which they have maneuvered the parties into a concession granting the Attorney General benefits which he is required to add to the property vested by him, and presently acquiring for themselves benefits free of the vesting order. The benefits to be paid directly to Edwin and Constance partake somewhat of the nature of a windfall, as the source from which they will come was adjudicated to be the property of another and was never adjudicated to be legally vested in the custodian, hence it cannot be said that the Attorney General has made an implied transfer by gift to them (cf. *Matter of Von Rumohr,* 284 App. Div. 773). Under paragraph 10 of agreements No. 2-A, Edwin, Constance and the Attorney General agree that upon Edwin's and Constance's shares becoming distributable by the Attorney General, the Attorney General shall first repay to Michael's guardian the sum of $150,000, to be received from Michael's share, or such part thereof as may be available under a formula not presently material. Edwin and Constance, however, are under no obligation to repay Michael's guardian at any time any part of the $250,000 which they are to receive direct from his share.

The assignments by their terms are to have no force or effect until the shares of Edwin and Constance are divested by the custodian. Although the assignments apparently purport to assign all of Edwin's and Constance's interests, the trustees are authorized to pay only up to certain specified sums, and the assignees do not contend that they are entitled to any sums

in excess of such sums. Edwin and Constance, therefore retained the balance of their shares. An assignment at law contemplates a completed transfer of the entire interest of the assignor in the particular subject matter (*Kavanaugh* v. *Cohoes Power & Light Corp.*, 114 Misc. 590, 608; *Matter of Brogan*, 165 Misc. 111, 119). "To constitute a valid assignment there must be a perfected transaction between the parties intended to vest in the assignee a present right in the thing assigned. An agreement to pay a certain sum out of, or that one is entitled to receive, from a designated fund, when received, does not operate as a legal or equitable assignment, since the assignor in either case retains control over the subject-matter" (*Donovan* v. *Middlebrook*, 95 App. Div. 365, 367, *supra*). An equitable assignment does not exist where an assignor retains any control over the fund or any authority to collect, or any power to revoke (*Farmers' Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, 362, mod. 238 N. Y. 477). Until the occurrence of divesture by the custodian, implicit in the assignments is the retention by the assignors of the right of control over their entire shares as they deem advisable and not inconsistent with the assignees' rights. The assignees do not contend that Edwin and Constance exceeded or abused their powers of control by entering into the agreements. The assignees' primary dispute with all the parties centers around Edwin's and Constance's attempt to arrogate for themselves all the direct benefits which flow to them free from any obligation to pay the assignees anything. Under all the aforesaid authorities, the instruments are not legal or equitable assignments and the assignees are not necessary parties to the compromise agreements. The instruments are, however, in form assignments and it would appear to have been the intent of the parties that they were to be in fact assignments.

An assignment ineffective at law, may nonetheless amount to the creation of an equitable lien when the subject matter of the assignment has been reduced to possession and is in the hands of the assignor or of the person claiming under him with notice (*Martin* v. *National Surety Co.*, 300 U. S. 588, *supra*). The assignments herein, if otherwise valid except for the Assignments of Claims Act, are not, as between the parties thereto, void and give rise to an enforcible equitable lien, and the effect to be given to them is determined by the relevant factors present on the date of decision rather than the date of the execution of the assignments (*Bingham & Co.* v. *Bie*, 133 N. Y. S. 2d 453 and cases cited). While the sum of $250,000 has not yet been paid to

Edwin and Constance, immediately upon the court's approval of the compromise agreements that sum would be placed in and reduced to their constructive possession and the lien attaches (*Central Trust Co.* v. *West India Improvement Co.*, 169 N. Y. 314, 323).

Edwin and Constance have interposed a joint reply to the assignees' objections, which raises issues as to the validity and scope of the assignments, which issues cannot be determined without a hearing. The issues involving the right of the assignees to be necessary parties to the compromise agreement have been hereinbefore decided adversely to them. Their rights, if any, as equitable lienors to participate in the funds hereinafter directed to be deposited to the credit of Edwin and Constance in this estate are severed from this proceeding. The severance of these issues is dictated by the fact that none of the other parties in this proceeding is interested in or will be affected by any disposition which may be made, and no necessity exists for the trustees to hold such funds as stakeholders. The attorneys may arrange with the court for a date for hearing and give appropriate notice thereof to all attorneys appearing.

No consideration has been given to the claim of Edwin and Constance, raised solely in their memoranda, that the objections of respondents Baer and Feiners should be dismissed. In order to bring the matter before the court, properly, there must be a formal application by notice of motion with appropriate notice to those to whom it is addressed.

The compromise agreements appearing to be in the best interests of the infant, they are approved in all respects, except that the respective trustees of each trust are directed to pay to the city treasurer to the credit of Edwin and Constance in this proceeding and subject to their attorney's lien and to the further order of this court, the sums of $62,500 each, under the authority granted to this court by the terms of paragraph numbered 14(a) of agreements No. 2-B. Such sums are to be held subject to the determination of the rights of Edwin's and Constance's assignees to share therein. The action of the special guardian in affixing his signature to the agreements is approved, and his allowances and disbursements fixed in the recommended sums. The fees and disbursements of the attorneys for the respective trustees and the general guardian, as suggested, are reasonable in amount and are allowed. The sources of payment of all such fees and disbursements are those provided in the agreements.

Settle decree on notice.