UNITED STATES of America,
Plaintiff–Appellee,

v.

CERTAIN FUNDS ON DEPOSIT IN SCUDDER TAX FREE INVESTMENT ACCOUNT # 2505103 and Certain Funds on Deposit in T. Rowe Price Tax Exempt Money Fund Account # 200413322–77, Defendants,

Aaron A. Baer, sole owner of the dft "certain funds on deposit in Scudder tax free investment account No. 2505103" and sole owner of "certain funds on deposit in T. Rowe tax exempt money fund account No. 200413322–77", Claimant–Appellant.

No. 1548, Docket 93–6025.

United States Court of Appeals,
Second Circuit.

Argued May 28, 1993.

Decided July 14, 1993.

Robert S. Fink, New York City (Kostelanetz Ritholz Tigue & Fink, Ross N. Herman, Catherine A. Duke, Caroline Rule, of counsel), for claimant-appellant.

Joseph D. McCann, Brooklyn, NY, Asst. U.S. Atty. for the E.D. of N.Y. (Mary Jo White, U.S. Atty. for the E.D. of N.Y., Robert L. Begleiter, Deborah B. Zwany, Asst. U.S. Attys., of counsel), for plaintiff-appellee.

Before: FEINBERG and NEWMAN, Circuit Judges, and KELLEHER, District Judge.*

---

* Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

FEINBERG, Circuit Judge:

Claimant-appellant Aaron A. Baer appeals from an order entered in November 1992, in the United States District Court for the Eastern District of New York, Arthur D. Spatt, J., granting summary judgment to plaintiff-appellee United States of America, dismissing Baer's claims to the defendant-accounts and forfeiting those accounts to the United States. For the reasons stated below, we reverse and remand.

## Background

In 1978, Baer purchased a New York City Industrial Development Agency Revenue Bond (1978 Valco Reproduction Mailing Services, Inc. Project) with a face value of $125,000 (the Valco bond). In 1982, Baer purchased a similar bond (Nab Construction Corporation Project) with a face value of $180,000 (the Nab bond). Baer was an officer of the United Independent Federal Credit Union (United) at the time he purchased each bond.

In 1983, Baer purportedly assigned his interest in the Valco and Nab bonds to United. Baer claims that these assignments were sham transactions, without real effect, and that he retained ownership of the bonds. Baer asserts that there is no evidence that the document purporting to assign the Nab bond was ever delivered to United, and that there is no written assignment of the Valco bond in the record. Baer claims that it was always understood by himself and the other officers of United that United was nothing more than Baer's nominee and that Baer retained ownership of the bonds and was entitled to their proceeds. In support of this claim, Baer asserts that United gave no consideration for the bonds and never listed the bonds as assets on its books; the bonds similarly were never listed as assets in any of the reports filed by United with the National Credit Union Administration Board (NCUA) and were never recorded as United's assets in any audit report produced by the NCUA.

Consistent with his asserted understanding that the bonds were his, Baer claims that he arranged with United to have the monthly principal and interest paid to his personal accounts. Baer's uncontradicted affidavits

tell the following story. Each month, United received payment of approximately $1,084 on the Nab bond. At about the same time, United wrote a check for the equivalent amount to Baer, which Baer deposited in his T. Rowe Price Tax Exempt Money Fund Account No. 200413322–77 (the Price account). Similarly, United received a monthly payment of approximately $1,981 on the Nab bond and wrote a check for the equivalent amount to Baer, who then deposited it in his Scudder Tax Free Investment Account No. 2505103 (the Scudder account). Baer asserts that United's records fully disclosed this routing of monthly payments on the bonds through United, as nominee, to Baer's accounts, and that neither Baer nor United ever sought to hide or conceal from government regulators this use of United as Baer's nominee.

In November 1990, the NCUA appointed itself conservator of United and took possession of United's books and records. Thereafter, Baer claims, he attempted to have the Valco and Nab bonds formally reassigned to his name to comport with his actual ownership of the bonds; in response, the government had him arrested, alleging that he had attempted to impede the functions of the NCUA Board, in violation of 18 U.S.C. § 1032(2). In July 1991, the criminal complaint against Baer was dismissed without prejudice.

In the instant civil action, the government alleges that Baer willfully misappropriated the monthly principal and interest on the bonds, in violation of 18 U.S.C. § 657. In support of this claim, the government alleges that Baer knew that the payments generated by the bonds were the property of United when he arranged for United to issue checks to him in the exact amount of the payments. Further, the government alleges that Baer's subsequent deposit of those checks from United into the Price and Scudder accounts constituted money laundering, in violation of 18 U.S.C. § 1956(a)(1). On this basis, pursuant to 18 U.S.C. § 981(a)(1)(A), the government sought forfeiture of *all* the money in the Price and Scudder accounts, amounting to $139,445 and $256,105, respectively, not just the $97,630.95 and $162,520.17 that rep-

resented the identifiable amounts of the United checks in those respective accounts.

Baer filed claims for each of the defendant-accounts and answered the complaint. In August 1992, in an oral opinion, Judge Spatt awarded the government summary judgment and forfeited both accounts. The district court apparently accepted the government's theory that Baer had violated 18 U.S.C. § 657 by "taking funds from United without authorization, a statutory violation." The court, however, apparently made no other finding bearing on criminal intent.

At the close of his August 1992 decision, Judge Spatt granted Baer leave to file a motion for reargument. Thereafter, in an oral opinion and in a written order in November 1992, Judge Spatt granted the motion for reargument, but upon reargument, adhered to his prior decision. This appeal followed.

## Discussion

Summary judgment is improper unless there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the district court cannot try issues of fact but must determine only whether there are issues of fact to be tried. The burden is on the party moving for summary judgment to demonstrate the absence of any genuine issue of material fact. See *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984). In determining whether the moving party has satisfied this burden, the court must resolve all ambiguities in favor of the non-moving party and draw all reasonable inferences against the moving party. See *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In other words, the court must view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may reasonably be drawn. Moreover,

> [t]his admonition [to view the evidence in the light most favorable to the opponent] should especially be kept in mind when the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions.

*Empire Elecs. Co. v. United States*, 311 F.2d 175, 180 (2d Cir.1962).

Baer argues in this court, among other things, that there remain genuine issues of material fact concerning (i) the validity of his purported assignment of the Nab and Valco bonds to United in view of his intent *not* to assign the bonds; and (ii) whether he had the requisite knowledge or intent to violate either 18 U.S.C. § 657 (embezzlement of funds belonging to credit institution) or 18 U.S.C. § 1956(a)(1) (money laundering). Indeed, as to the latter, Baer argues that the district court made no finding at all. Both issues involve questions of intent, which makes them especially unsuitable for summary judgment.

The government asserted in the district court that Baer did make *bona fide* assignments of the Nab and Valco bonds to United. If, however, as Baer argues, the purported assignments were sham transactions and thus did not transfer ownership of the bonds to United, then Baer did not willfully misapply United's funds in violation of 18 U.S.C. § 657 when he directed United to issue him checks for the bond proceeds. Further, if he and United were both aware that the purported assignments to United were not assignments in substance, Baer could not have laundered money in violation of 18 U.S.C. § 1956 because the allegedly laundered money did not belong to United.

In his initial affidavit in opposition to the government's summary judgment motion, Baer contested the government's assertion that the purported assignments transferred ownership of the bonds to United. In support of his position, he stressed that United gave no consideration for the bonds and did not record the bonds as an asset on its books. Baer further maintained that he retained ownership of the bonds and their proceeds at all times, that the transactions concerning the flow of the bond proceeds were not concealed in any way, and that the transactions were clearly reported in the books and records of United. His affidavit stated:

> The 1983 assignment to United was made solely for my personal convenience. United paid nothing for the bonds. Nor is

there any record in United showing that the bonds were treated as an asset of United. A review of the annual and semi-annual reports required by law to be filed with the NCUA will show that the bonds were not considered as an asset of United. And a review of the records will confirm that United paid nothing for the assignment of these bonds.

While the bonds were assigned to United, [the bonds' trustee] forwarded the monthly amortized payments to United pursuant to my direction. As the Government concedes, these monthly payments, after being deposited into United, were simultaneously forwarded to the Scudder and Price accounts. As United records show, there was no attempt whatever to conceal, camouflage or hide in any way, the manner in which the monthly payments were routed through United to the Scudder and Price accounts. The examination reports conducted by NCUA should confirm this fact.

In his motion for reargument, Baer submitted a supplemental affidavit in which he elaborated on the "personal convenience" referred to in his first affidavit. In the supplemental affidavit, Baer stated that he had been in the midst of marital difficulties at the time and that he had placed the bonds in United's name in order to shield them from his then-wife. He did this, he said, to ensure that the assets would be available for the education of his daughter.

The district court did not consider Baer's supplemental affidavit when it decided the motion for reargument. The court may have been relying on Local Rule 3(j), which provides that on a motion for reargument, "[n]o affidavits shall be filed by any party unless directed by the court." Baer points out that, regardless of the provisions of Rule 3(j), district courts have repeatedly considered supplemental affidavits. See, e.g., *In re Gulf Oil/Cities Service Tender Offer Litigation*, 1989–2 Trade Cas. (CCH) ¶ 68,803, 1989 WL 123109 (S.D.N.Y.1989) (court considered affidavits submitted without permission required by Rule 3(j) where it would elevate "form over substance" not to do so).

The principle underlying Rule 3(j) is that a party, on a motion for reargument, should not be permitted "to advance new facts, issues, or arguments." *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989) (citation omitted). Baer's supplemental affidavit did not raise new issues or arguments and, arguably, merely elaborated on facts set forth in his initial affidavit, namely, that the purported assignments were "shams" entered into for his "personal convenience." Thus, according to Baer, the district court should have considered his supplemental affidavit and, even though it did not, this court may do so in determining whether genuine issues of material fact exist. For reasons indicated below, we need not decide whether the district court erred in refusing to consider the supplemental affidavit, although it lends strong support to Baer's claim that there is a genuine issue as to a material fact.

Even without considering the supplemental affidavit, the effect of Baer's factual claims, if correct, may be to render the purported assignments invalid as a transfer of ownership of the bonds. Under New York law,

such words as "sells, assigns, and sets over" indicate[ ] an intent to transfer legal title but are not conclusive. The use of the term "assignment" as a descriptive term in an instrument does not invariably make it one, and the absence of such language is not necessarily fatal. However, an intent to assign is essential, and the intent must be manifested by some act or transaction sufficient to transfer title. . . . [Moreover,] the assignor must divest himself of all control over the thing assigned.

6 N.Y.Jur.2d Assignment § 28 (1980) (citations omitted) (general requisites of valid assignment). Depending on the evidence before it, a jury could find that the creation of a valid assignment under New York law was precluded here because (1) neither the assignor nor the assignee intended that an instrument purporting to transfer ownership would actually do so, and (2) the assignor retained control over the things purportedly assigned and had a power to revoke his instructions concerning the transfer of proceeds therefrom. See *Maloney v. John Hancock Mut. Life Ins. Co.*, 271 F.2d 609,

614 (2d Cir.1959) (creation of valid assignment precluded if assignor retained control over disposition of funds); *In re Knowlton's Will,* 208 Misc. 454, 143 N.Y.S.2d 111, 120 (Sur.Ct. Kings Cty.1955) (assignment cannot exist where assignor retains control over funds or any authority to collect or power to revoke).

In its November 1992 ruling, the district court appeared to recognize the conflicting evidence concerning the purported assignments:

> Aaron Baer did not dispute that he assigned the bonds to United, but *contended that the assignment was merely a convenience, it was not really a valid assignment,* and that discovery would show that United never paid for the bond, or that even United treated them as an asset. (emphasis added)

Although it thus seemed to acknowledge a factual controversy, the district court nevertheless adhered to its prior grant of summary judgment to the government. The material issues of fact concerning the validity of the purported assignment and its intended effect should have precluded the district court from granting summary judgment. Cf. *Empire Elecs. Co.,* 311 F.2d at 179–180 (in dispute as to whether ownership had been transferred, record included conflicting affidavits and other evidence; court denied summary judgment on ground that reasonable men could draw conflicting inferences from evidence).

One of the government's responses to Baer's sworn statements concerning his actions, intentions and state of mind regarding the bonds is to assert that other "evidence" contradicts Baer's claim that he in good faith believed the purported assignments of the Nab and Valco bonds did not transfer ownership. This evidence, which allegedly impugns Baer's credibility and contradicts his assertions, merely highlights the existence of material issues of fact, and thus supports the conclusion that summary judgment should not have been granted.

When resolved in Baer's favor, as must be the case on the government's motion for summary judgment, questions as to the validity of Baer's assignment of the bonds form the basis of a number of defenses to this forfeiture action. (1) If Baer did not intend to assign the bonds to United, and if, as a result, the purported assignment did not operate to transfer ownership of the bonds, then Baer did not "embezzle ... or willfully misappl[y] ... funds" belonging to United in violation of 18 U.S.C. § 657. Alternatively, if the purported assignment *did* operate to transfer ownership of the bonds to United, but Baer in good faith did not understand this to be so, then again he did not have the requisite knowledge or intent necessary for embezzlement or willful misapplication in violation of § 657. (2) If Baer did not violate § 657—the only "specified unlawful activity" alleged by the government as a predicate to the alleged money laundering violation under 18 U.S.C. § 1956(a)(1)—then he did not launder money in violation of § 1956. (3) Finally, if Baer did not violate § 1956, then the government's forfeiture claim under 18 U.S.C. § 981(a)(1)(A) must necessarily fail.

Accordingly, we believe it was error for the district court to grant summary judgment to the government on this record. The parties raise a number of other arguments, which we do not find it necessary or advisable to decide. Thus, Baer argues, among other things, that the civil forfeiture deprived him of due process because the district court denied him discovery, and violated the Eighth Amendment's ban against excessive fines because *all* the funds in the Scudder and Price accounts—rather than just the "tainted" sums—were forfeited. Baer also argues that the district court erroneously held that 18 U.S.C. § 981(a)(1)(A) authorizes forfeiture of property used to "facilitate" the predicate offense, even though the statutory language does not contain that term, but instead uses the term "involved."[1] These are significant issues better decided after

---

1. Section 981(a)(1)(A) provides in relevant part that "the following property is subject to forfeiture to the United States":

   Any property, real or personal, *involved* in a transaction or attempted transaction in viola-

   tion of ... section 1956 ... of this title, or any property traceable to such property. (emphasis added)

further proceedings below (including discovery) and development of the record.

■ Also, the government claims, among other things, that Baer is estopped by the *D'Oench* doctrine, see *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), from arguing that he never relinquished ownership of the Nab and Valco bonds. *D'Oench* prevents makers of notes (debtors) from asserting side agreements with a bank as defenses against the FDIC as the subsequent holder of a note. See id. at 460, 62 S.Ct. at 680. The district court did not decide whether the facts of this case warranted an extension of the *D'Oench* doctrine. Sound judicial administration suggests that the issue be considered there first in the context of a full record with due account taken of Baer's contentions that (1) he is not proffering a side agreement to avoid paying a debt to United, but rather to assert his ownership interest in seized property and to explain his state of mind when he directed bond proceeds into his accounts; and (2) the NCUA was not misled by United's books into believing that the bonds were assets of United.

In sum, because Baer raised genuine issues of material fact, the district court erred in granting the government's motion for summary judgment and forfeiting all the funds in defendant-accounts. Accordingly, we reverse and remand to the district court for proceedings consistent with this opinion.